IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HOUSE OF HUNAN EXPRESS, INC., a Nebraska corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | 8:21CV96<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant's motion to strike Plaintiff's experts, Filing No. 69, and on Plaintiff's motion in limine, Filing No. 71. Plaintiff has also filed a motion for partial summary judgment, Filing No. 83, and Defendant has filed a motion for summary judgment, Filing No. 84.[1] This is a breach of contract action, wherein, Defendant Travelers Casualty Insurance Company of America (hereinafter "Travelers") issued an insurance policy to House of Hunan Express Inc. (hereinafter "Hunan). In January of 2020 Hunan sustained extensive fire damage to its restaurant in Omaha, Nebraska Travelers then denied the claim under both a condition and an exclusion in the policy.

**Background**

The material facts are as follows:

Plaintiff owned and operated House of Hunan Express, Inc. a/k/a Three

---

[1] Because of the Court's ruling in this case, it need not decide Filing Nos. 69, 71, or 83. They will be denied as moot.

1

Happiness Express.  Since at least 1999, the Restaurant has been equipped with a UL-listed automatic fire suppression system: an Ansul-branded "R-102" fire extinguishing system ("the Ansul System").  Sayavong Depo. Filing No. 86-5 at 3, 8–9 (12:23-25, 30:23-31:16, 34:1-10, 34:18-35:6); Plaintiff's Responses to Requests for Admission Filing No. 86-7 at 2, Nos. 5–8.  The Ansul System is the only UL-listed automatic fire suppression system in place in the Restaurant.  *Id.*  This system is made to activate automatically if a fire ignites.  In particular, the Ansul System sprays a chemical fire suppressant into the plumbed exhaust hood and shuts off fuel sources to the cooking surface.  The 2012 International Fire Code requires that these systems be serviced and maintained as set out in the Fire Code, at least every six months.  The Ansul System at House of Hunan was inspected on January 7, 2014, and serviced at that time.  House of Hunan did not service the Ansul System again.

In February of 2014, House of Hunan applied for and obtained property insurance from Travelers.  Hunan worked with an independent insurance agent, Retailers Insurance Group, Inc. and its agent John Treantos ("Treantos").  Hunan's authorized agent, Dao Sayavong ("Sayavong") met with Treantos to discuss the business and its operations. Treantos gave Sayavong a document entitled "Restaurant Supplemental Application" which had questions regarding the restaurant industry.  They met several times regarding the answers and questions in this application. The application included the following series of questions:

2

> 17. Are all hoods, ducts, grease filters and surface cooking equipment (including deep fat fryers) protected by a UL listed automatic fire suppression system?  ☒ Yes ☐ No ☐ Unknown
>    (a) Is there a service/maintenance agreement in place for the protective systems?  ☒ Yes ☐ No ☐ Unknown
>    (b) Name of Firm:
>    (b) Is the fire suppression system professionally inspected and serviced at least every six months?  ☒ Yes ☐ No ☐ Unknown

> (c) Date last serviced: 1-2014
> (d) How often are exhaust systems, hoods and ducts cleaned?
>   ☒ Quarterly  ☐ Semi-annually  ☐ Annually  ☐ Unknown
> (e) How often are filters cleaned:
>   ☐ Weekly  ☒ Bi-Weekly  ☐ Monthly  ☐ Unknown
> (f) Does the system automatically shut off all sources of fuel and heat to equipment protected by the suppression system (including electrically heated deep fat fryers)?  ☒ Yes ☐ No ☐ Unknown
> (g) Does the system have a manual pull fuel shut-off valve readily accessible?  ☒ Yes ☐ No ☐ Unknown

> Additional Comments:
> Midwest Fire & Security Provides hood & extinguisher service.
> General Fire & Safety provides the fire suppression service.

Filing No. 86-3 at 2–3. Thereafter, Sayavong signed the application. Sayavong testified that "I would not have signed [the Restaurant Supplemental Application] if it was not accurate." Filing No. 86-5 at 16 (62:19–22). Each of these questions and answers referred to the Ansul System. Filing No. 86-5 at 27–28 (108:8–109:23); Filing No. 86-3. Sayavong testified that she knew the answers were for purposes of applying for the insurance policy. Filing No. 86-5 at 20, 23–24 (79:2-16, 92:21-23, 93:13-18); Filing No. 86-6 at 43–44 (172:8-173:5). Sayavong said she intended to represent to Travelers, on behalf of Hunan that:

> a. The Restaurant was equipped with an automatic fire suppression system (i.e., the Ansul System) Filing No. 86-5 at 27–28 (107:16–108:19, 109:2–109:19);
>
> b. The Ansul System is professionally inspected and serviced at least every six months Filing No. 86-5 at 19, 32 (73:15–74:20, 125:25–126:13);

3

and,

c. The Ansul System was last serviced in January of 2014 by General

Fire & Safety, Filing No. 86-5 at 27–28 (108:20–109:1).

Treantos then accessed Travelers online web portal system and provided the application questions and answers to Travelers. Treantos completed the application and answers through this web portal. One of the questions asked on the Policy application is "[a]re all hoods, ducts, grease filters, deep fryers and surface cooking equipment protected by a UL listed automatic fire extinguishing system serviced and inspected every 6 months?" Filing No. 86-4 at 2. The answer checked by Sayavong was "yes."

Travelers submitted a "Master Pac Insurance Proposal" for Hunan which Treantos provided. It contained all coverages and the description that the "protective safeguards endorsement applies". Filing No. 86-9. Sayavong signed the Proposal, and the policy was issued in 2014. *See* Filing No. 86-10. There is also an Amended 2019 Policy. *See* Filing No. 86-2. The 2019 Policy is identical as it relates to the protective safety equipment (PSE), including a "schedule," a "condition," and an "exclusion." Filing No. 86-2 at 10–11; Filing No. 86-10 at 52–53. The PSE provided in its entirety:

POLICY NUMBER: 680-1E613246-14-42-

BUSINESSOWNERS
ISSUE DATE: 02/06/2014

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS ENDORSEMENT FOR SPRINKLERED LOCATIONS AND RESTAURANTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

### SCHEDULE*

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable | Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|---|---|---|
| 001 | 001 | P9 | | | |

1. The following is added to the:

    BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
    BUSINESSOWNERS PROPERTY COVERAGE STANDARD FORM

    **PROTECTIVE SAFEGUARDS**

    a. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

    b. The protective safeguards to which this endorsement applies are identified by the following symbols:

    "P-1"  Automatic Sprinkler System, including related supervisory services

    Automatic Sprinkler System means:

    (1) Any automatic fire protective or extinguishing system, including connected:

    (a) Sprinklers and discharge nozzles;

    (b) Ducts, pipes, valves and fittings;

    (c) Tanks, their component parts and supports; and

    (d) Pumps and private fire protection mains.

    (2) When supplied from an automatic fire protective system:

    (a) Non-automatic fire protective systems; and

    (b) Hydrants, standpipes and outlets.

    "P-9" Protective system covering cooking surface as described in application for insurance on file with the company

2. The following is added to the EXCLUSION section of:

    BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
    BUSINESSOWNERS PROPERTY COVERAGE STANDARD FORM

    We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

    a. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

    b. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

    If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

5

Filing No. 86-2 at 10–11.  Further, the Policy stated that "[a] breach of warranty or condition will void the policy if such breach exists at the time of loss and contributes to the loss."  Filing No. 86-10 at 69, Sec. C.  Hunan described the Ansul System in the Restaurant Supplemental Application.  Filing No. 86-5 at 30 (117:12–18); Filing No. 86-3.  Sayavong agreed that she reviewed the Policy in its entirety.  Filing No. 86-5 at 25 (97:5-12).  She stated she understood that the Supplemental Application described the Ansul System to Travelers.  After 2014, Hunan never did any maintenance on the Ansul System.  On the day of the fire, the Ansul System did not function as designed.  Following the fire, Travelers declined coverage for Hunan's fire loss claims.

**Standard of Review**

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)).  The court views facts in the light most favorable to the nonmoving party, and makes no determinations of credibility; nor does it weigh the evidence or draw inferences, as those functions belong to the jury.  *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971–72 (8th Cir. 2019).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

The record must indicate an absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019).  "Facts that, if altered,

6

affect the outcome of a lawsuit under applicable substantive law, are material." *Cottrell*, 930 F.3d at 972; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A material fact dispute is "genuine" if each party has supplied some evidence that is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cottrell*, 930 F.3d at 972. If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

"[A]n insurance policy is to be construed as any other contract; if its terms are clear, they are to be applied according to their plain and ordinary meaning." *Lumbard v. W. Fire Ins. Co., Fort Scott, Kan.*, 381 N.W.2d 117, 119 (Neb. 1986). The Nebraska Court of Appeals summarized the governing rules in *Gies v. City of Gering* as follows:

> Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. A contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. A policy will not be considered ambiguous merely because a word or phrase, isolated from its context, is susceptible to more than one meaning. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses.

*Gies v. City of Gering*, 695 N.W.2d 180, 189 (Neb. Ct. App. 2005) (citing *Poulton v. State Farm Fire & Cas. Companies*, 675 N.W.2d 665 (Neb. 2004)). "In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved." *Poulton*, 675 N.W.2d at 667.

Nebraska courts have also held that both statutes and local ordinances are incorporated into insurance policies as a matter of law. *See Dinneen v. Am. Ins. Co. of*

7

*City of Newark, N.J.*, 152 N.W. 307, 308 (Neb. 1915) (recognizing the rule, "The parties are presumed to know of the ordinances. They directly and materially affect their rights in case of a loss under the policy and should govern and control in the adjustment and settlement of such loss.").

An insurance policy is a contract. *Callahan v. Washington Nat. Ins. Co.*, 608 N.W.2d 592, 597 (Neb. 2000). "The meaning of a contract and whether a contract is ambiguous are to be determined by a court as questions of law." *Cmty. First Bank v. First Cent. Bank McCook,* 969 N.W.2d 661, 671 (Neb. 2022). Under Nebraska law, courts must construe insurance policies to "give effect to the parties' intentions at the time the contract was made." *Katskee v. Blue Cross/Blue Shield*, 515 N.W.2d 645, 649 *(Neb. 1994)*.

"In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved." *Poulton*, 675 N.W.2d at 671.Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Volquardson v. Hartford Ins. Co. of the Midwest*, 647 N.W.2d 599 (Neb. 2002). When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Community First Bank*, 969 N.W.2d at 674. Moreover, "the language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them." *Poulton*, 675 N.W.2d at 671.

### *Motion for Summary Judgment by Travelers, Filing No. 84*

Travelers moves for summary judgment pursuant to Fed. R. Civ. P. 56. Travelers

contends there is no material fact in dispute, and it is entitled to summary judgment as a matter of law. The Policy provided: "A breach of warranty or condition will void the policy if such breach exists at the time of loss *and* contributes to the loss." Filing No. 86-10 at 69, Section C. Travelers argues that the Ansul System is the required system for the safety of the insured premises. Hunan's owner signed the application, agreed it had an Ansul System and further agreed to maintain it as required in the Policy. At the time of the fire, the Ansul System, argues Travelers, was deficient in at least the following areas:

> a. The gas shutoff actuator cable was in poor condition and disrepair;
> b. The manual actuator cable had seized up and was inoperable;
> c. The automatic actuator cable at the north end of the north hood (which was near the fire origin) was inoperable due to the accumulation of grease and other particulates;
> d. The line running from the gas shutoff cylinder to the compressed gas cylinder in the lower enclosure of the system had become disconnected;
> e. There was a loose connection of the nozzle piping to the overhead tank that supplied suppressant to the north hood; and,
> f. The fire suppressant nozzle that was in close proximity to the area of origin was clogged with grease and other particulates.

Filing No. 86-16 at 2, ¶ 8 (Affidavit of Christopher Spies, Engineer). Thus, argues Travelers, the system did not operate as designed in response to the fire. It did not release the chemical suppressant, it did not automatically shut off the fuel sources to the cooking surface, and it did not automatically activate to extinguish the fire and prevent it from spreading beyond the hood area. Filing No. 86-16, at 61–65. Travelers argues that the language of the PSE is clear and unambiguous, and the conditions and exclusions are likewise clear.

Hunan contends that there is an ambiguity under the Policy regarding the PSE. Hunan argues that the Restaurant Supplemental Application and the Traveler's online portal document are two different documents with some distinct sets of questions and

9

information. Hunan contends that the P-9[2] definition and the PSE are ambiguous. Hunan also contends that the word "covering" in the P-9 Definition is confusing. Hunan argues that to maintain a single "protective system," "covering," and "cooking surface" is confusing and misleading and does not require maintenance of an Ansul-brand or other specific system. Hunan asserts that its hood and exhaust system is a 'protective system'. Hunan argues that the hood in Hunan's restaurant covers the line of cooking equipment along the east wall in its restaurant and is connected to an exhaust system which functions as a "protective system" and exhausts heat and smoke to protect against fires. Filing No. 85-1 at 3, Aff. of Daoleuang Sayavong ¶ 9.

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **a. Ordinance or Law**

    (1) The enforcement of any ordinance or law:

    (a) Regulating the construction, use or repair of any property; or

    (b) Requiring the tearing down of any property, including the cost of removing its debris.

    (2) This exclusion, Ordinance or Law, applies whether the loss results from:

    (a) An ordinance or law that is enforced even if the property has not been damaged; or

    (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

Filing No. 85-5 at 87.

The Court has carefully reviewed the arguments and evidence submitted by the parties. The Court finds there are no material facts at issue in this case. The Court further finds there are questions of law that must be decided by the Court. First, the Court

---

[2] The P-9 language in the Policy states: Protective system covering cooking surface as described in application for insurance on file with the company. Filing No. 86-2, at 11.

10

determines that Hunan cannot get fire insurance coverage if it does not maintain its fire suppression system, specifically the Ansul system. There is no disagreement between the parties that Hunan did not perform a single inspection for over six years on its Ansul system. The Court agrees with the defendant that at the time of the fire, the Ansul System was deficient in the six areas discussed by Christopher Spies as delineated on page 9 of this Memorandum and Order.

The Court also finds that the P-9 Definition that the protective safeguard required under the PSE is in fact the Ansul System. The title of that section is "Protective Safeguards Endorsement for Sprinklered Locations and Restaurants, notably from "loss or damage caused by or resulting from fire." Clearly, these sections refer to loss by fire. The Ansul system clearly applies here. There is no ambiguity in that language. Hunan was required to have this system and to maintain this system. That definition is the: "[p]rotective system covering cooking surface as described in application for insurance on file with the company." The PSE is contained in the P-9 definition in both the condition and the exclusion. Under the condition, Hunan was required, as a condition for coverage, to maintain "the protective devices or services" that meet the P-9 definition. *See* Exclusions on page 10 of this Memorandum and Order. Under the exclusion, there would be no payment by Travelers for "Protective system covering cooking surface as described in application for insurance on file with the company." Hunan failed to maintain "any protective safeguard" that met the P-9 Definition, and it clearly was not kept in complete working order. Hunan clearly did not do the maintenance as required under the Policy. Travelers did not insure against this risk.

11

Further, the City of Omaha Fire Code Filing No. 86-15 and the Ansul R-102 Design, Installation, Recharge and Maintenance Manual Filing No. 86-16 at 34 that both dictate that a restaurant must have its automatic fire extinguishing system inspected and serviced at least every six months. Dao Sayayong signed Plaintiff's Supplemental Restaurant Application confirming Plaintiff's representations of compliance with these maintenance requirements. *See* Sayavong Depo., Filing No. 86-5 at 40 (158:17–159:24). It is important for the Restaurant to have a properly operating Ansul System. Filing No. 86-5 at 48–49 (192:24–193:23). The "covering" in the P-9 definition is intended to be protection for the cooking surface. This is exactly what the Ansul System is designed to do.

The exclusion requires Hunan to maintain in complete working order any "protective safeguard" that meets the P-9 definition. Further, the Court notes that Hunan's expectations for coverage do not override the plain, unambiguous language of the Policy. Accordingly, the Court finds that coverage is barred in this case, under both the conditions and exclusions sections of the Policy. "Because we have concluded that the exclusion in the homeowner's policy is unambiguous, we do not take into consideration whether application of the exclusion to the facts of this case would be consistent with the reasonable expectations of the insured who purchased the policy with knowledge of its content." *Am. Fam. Mut. Ins. Co. v. Hadley*, 648 N.W.2d 769, 779 (Neb. 2002).

For the forgoing reasons, the Court concludes that summary judgment will be granted in favor of Travelers and against Hunan.

**THEREFORE, IT IS ORDERED THAT:**

1. Traveler's motion to strike Plaintiff's experts, Filing No. 69, is denied as moot.
2. Hunan's motion in limine, Filing No. 71, is denied as moot.

3. Hunan's motion for partial summary judgment, Filing No. 83, is denied as moot.

4. Traveler's motion for summary judgment, Filing No. 84, is granted.

5. Filing No. 101 and Filing No. 102, motions in limine, are also denied as moot.

6. The case is dismissed, and a separate judgment will be entered in conjunction with this Memorandum and Order.

Dated this 9th day of February, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge